Brandt v. Foster et al.

## BRANDT *v.* FOSTER *et al.*

In an action on a promissory note, no final judgment can be rendered in favor of the plaintiff, if the note is not produced in court, nor its absence accounted for.

Where in an action on a promissory note, the defendant being in default for want of an answer, a jury was empannelled to assess the plaintiff's damages; and where the plaintiff, asked for judgment, without producing the original note, and without introducing any evidence, rested his case, and thereupon the defendant moved the court for a non-suit, which motion was overruled; *Held,* That there could be no non-suit at that stage of the proceedings, and that the motion was properly overruled.

In an action on a promissory note given for the purchase money of real estate, it is not sufficient in a plea of failure of consideration, to allege merely a failure of title to the land conveyed.

In the conveyance of real estate, if no covenants are expressed in the deed, there is not, as in the sale and transfer of chattels, a warranty of the title.

If a deed of real estate, contains no covenants, the purchaser is wholly without remedy, for the consideration was the mere transfer to him, of the estate of the vendor, who was to be in no way responsible for the title ; and if the deed be delivered to the vendee, he has received the entire consideration for which he bargained, irrespective of any future events, and of the question of good or bad title.

The right of a grantee of real estate to relief, either in law or equity, on account of defects or incumbrances in the title, in the absence of fraud, depends solely upon the covenants for title, which he has received.

The right to relief, where there are covenants of warranty, in case of defects or incumbrances of title, is now recognized in courts of law and equity.

In courts of law, relief is allowed, on the principle of preventing circuity of action.

Where a grantee in a deed containing the usual covenants of title, is sued for the unpaid purchase money, instead of remitting him back to his covenants, in case of failure of title, the courts will allow him to make his defense at law, and he will not be obliged to pay the purchase money, which he may the next day recover back from his grantor.

Where the covenants, in a deed of real estate, are general and unlimited, reaching to the title, as well as the possession of the land conveyed, the consideration of the purchase, is the present transfer of the vendor's interest, and the covenants of title contained in the deed.

A covenant in a deed of real estate, that one is seized, or lawfully seized, means seized of an indefeasible estate; and a covenant of seizin, is regarded as a covenant for the *title*, the word being used as synonymous with *right*.

If at the time of the conveyance, the grantor does not own the land, the covenant of seizin is broken immediately.

In an action on the covenant of seizin, it is not necessary to allege an ouster or eviction. It is sufficient to negative the words of the covenant, and to allege that the grantor had no seizin or title to the land.

The measure of damages for breach of the covenant of seizin, is the consideration money and interest, upon the ground that this is the actual loss. If the grantee, however, has lost less, he is limited to the amount of injury sustained.

Where the vendee has himself extinguished the paramount title by purchase, his damages are limited to the amount reasonably paid for that purpose, provided it does not exceed the purchase money; and the burden of showing the amount to be reasonable, rests upon the grantee, the mere fact of the payment being no evidence of this.

So, where there has been a partial breach of the covenant of seizin, the grantee may recover *pro tanto.*

Upon a failure of title to a specific part of the premises conveyed, either party may, for the purpose of affecting the damages, produce evidence to show the relative value which that part bears to the whole.

The covenant of warranty, is intended to assure to the vendee, the possession of the premises conveyed, and is only broken by eviction. The eviction may be either actual or constructive.

Where the vendee is satisfied that the adverse claim is by title superior to his own, and assumes the responsibility of determining upon the chances of its success, if he retires before it, it is at his own risk; and in a suit with his covenantor, he must assume the burden of proof, and rely upon and make out the adverse title to which he yields.

When the adverse title has been hostilely asserted, its purchase is considered as equivalent to an eviction; and the idle form of abandoning the premises under one title, in order to re-enter under another, is deemed unnecessary.

Where an eviction has taken place, the courts do not hesitate to recognize the right of the vendee, to detain the purchase money. If the eviction extends to a portion only of the premises conveyed, he may retain it to the extent of the injury. If he has been obliged to buy in the outstanding title, he may deduct from the purchase money, the amount necessarily and *bona fide* paid for that purpose.

Hence, where in an action on a promissory note, the defendant answered, admitting the execution of the note, and averring that it was given in part payment for eighty acres of land, conveyed by plaintiff to defendant, by deed, dated April 22, 1854; that plaintiff had no valid title to the land, at the date of the deed, but that the title to the same was in one S., who had subsequently given notice to defendant, to quit the possession of the land; that defendant, to prevent eviction, had been compelled to purchase the land from S., and had paid him $700 therefor—of all which the plaintiff had notice; and that, therefore, the consideration of said note had wholly failed, to which answer

Brandt v. Foster et al.

was suspended the deed of the plaintiff, purporting to convey to the defendant, two tracts of land, amounting to 240 acres, and containing the usual covenants, and to which answer, a demurrer was sustained; *Held,* That the demurrer was improperly sustained.

*Appeal from the Chickasaw District Court.*

MONDAY, DECEMBER 9.

Suit on promissory note for one thousand dollars, due April 1st, 1855. Defendants filed their answer at the June term, 1856, of the Chickasaw district court. A demurrer to this answer was sustained, and defendants had ninety days within which to file their amended answer. At the November term succeeding, the amended answer having been filed, it appears from the record entry of the clerk, the parties appeared, and the cause proceeded to trial. The Court ordered the jury to be impannelled. Defendants moved to amend their answer, which was granted, upon payment of all costs up to that time. Amended answer filed, to which plaintiff demurred. Demurrer sustained, and defendants excepted. The court directed the jury to find for the plaintiff, and assess the damages on plaintiff's petition. Verdict for plaintiff for one thousand one hundred and eighty-five dollars and fifty-one cents, for which judgment was rendered. Defendants appeal. The other material facts, and the errors assigned, appear in the opinion of the court.

*Reuben Noble,* for the appellant.

*John T. Clark, S. B. Starr,* and *Clarke & Henley,* for the appellee.

STOCKTON, J.—The record entries of the clerk are somewhat confused, and do not show all the proceedings had in the district court. From one of the bills of exception, it appears that, " the cause came on to be heard on the issue formed by the pleadings, and the jury having been sworn, plaintiff's counsel stated his cause to the jury, and asked

judgment without producing, the original note. Whereupon defendants, by parol, craved oyer of the note, which plaintiff failed to produce, and without producing any evidence, rested his case. The defendants then moved the court for a nonsuit; which motion the court overruled, and defendant excepted." It is assigned for error, that the district court overruled the motion for a nonsuit, and directed the jury to find for the plaintiff upon his petition, without requiring the note sued on, to be produced in evidence.

According to our understanding of the record, there was no issue formed by the parties, to be tried by the jury. Defendants did not ask leave to amend, nor offer to plead over, after the court had sustained the demurrer to their second amended answer; and the cause stood as though judgment by default had been rendered against them for want of an answer. As the jury had been sworn, their duty was only to assess the plaintiff's damages. This duty, however, might have been as well performed by the clerk. Of course, there could be no nonsuit at this stage of the proceedings. The defendants could only appear for the purpose of cross-examining the plaintiff's witnesses. Code sec. 1771, 1828, 1831; *Cook & Owsley* v. *Walters*, 4 Iowa 72. The plaintiff's damages could not, however, be assessed without the production of the note sued on. If not produced, and its absence not accounted for, no final judgment could be entered in favor of plaintiff.

The remaining, and most important, question in the case, is that arising upon the first assignment of errors, in relation to the judgment of the district court, sustaining the demurrer to defendant's second amended answer. By this answer, defendants admit the execution of the note sued on, and aver that it was given in part, payment for eighty acres of land, conveyed by plaintiff to defendant, Foster, by deed, dated April 22, 1854; that plaintiff had no valid title to the land at the date of the deed, but that the title to the same was in one Snyder, who had subsequently given notice to defendant, Foster, to quit the possession of the land; and that Foster, to prevent eviction, had been

Brandt v. Foster et al.

compelled to purchase the land from Snyder, and had paid him seven hundred dollars therefor,—of all which, it is averred, plaintiff had due notice; and that, therefore, defendants say that the consideration of said note had wholly failed. The deed from plaintiff to Foster, is made part of the answer. It is a conveyance of two tracts of land, containing, in the whole, two hundred and forty acres, one of which is the tract of eighty acres, in part payment for which, it is averred, that the note was given, and to which, it is claimed, the plaintiff had no title. The consideration expressed in the deed is twenty-five hundred dollars, and it contains the usual covenants on the part of the grantor: 1. That he is lawfully seized of the premises; 2. That they are free from incumbrances; 3. That he has good right and lawful authority to sell and convey the same; and, 4. That he will warrrant and defend the same against the lawful claims of all persons whomsoever.

We are of opinion, that the demurrer to this answer, was improperly sustained. Taking the plaintiff's deed as part of the second amended answer, we think it presents, in substance, at least, a good defence to the plaintiff's action. It is true, that the facts relied upon, are not averred with the formality and precision desirable in pleading. We should have preferred that defendants, instead of merely referring to the deed, as part of their answer, had set out the covenants claimed to have been broken, upon the breach of which they rely for their defense. It is not sufficient to allege, merely a failure of title to the land conveyed. Such failure of title alone, does not support the plea of failure of consideration, in an action on a note given for the purchase money. In the conveyance of real estate, if no covenants are expressed in the deed, there is not, as in the sale and transfer of chattels, a warranty of the title. Possession constitutes the evidence of title to chattels, and is all that is transferred. A subsequent loss of this possession, by title paramount, is a breach of the warranty, because the vendor has agreed to transfer a possession which cannot be retained. The purchaser, therefore, in a suit

brought for the purchase money, may take advantage of a breach of warranty, either as to its quality or title, as a defence, and either as evidence of failure of consideration, or in mitigation of damages. *Herbert* v. *Ford*, 29 Maine, 546; *Reed* v. *Prentiss*, 1 N. H., 176; *Shephard* v. *Temple*, 3 Ib., 458; *Britton* v. *Turner*, 6 Ib., 481; *Withers* v. *Green*, 9 How., 214; Sedgwick on Damages, 427; Rawle on Cov. for Title, 631; *Simms* v. *Marryatt*, 7 Eng. Law and Eq., 336; *Barton* v. *Faherty*, 3 G. Greene, 327. In the creation or transfer of an estate of freehold, no covenant for title is implied, at the present day, by the common law, unless in case of exchange or partition, or, perhaps, where the word "give," may happen to be employed. Rawle, 474; *Young* v. *Hargrave*, 7 Ohio, 63; *Pringle* v. *Sturgeon*, 6 Littell, 112; *Allen* v. *Saywood*, 5 Greenleaf, 230; *Deakins* v. *Hollis*, 7 Gill & John. 311. If the deed contains no covenant, the purchaser is wholly without remedy, for the consideration was the mere transfer to him of the estate of the vendor, who was to be in no way responsible for the title; and if the deed be delivered to the purchaser, he has received the entire consideration for which he bargained, irrespective of any future events, and of the question of good or bad title. The right of the grantee to relief, either in law or equity, on account of defects or incumbrances in the title, in the absence of fraud, depends solely upon the covenants for title which he has received. If he has received no covenants, which cover the defect or incumbrance, he can neither detain the purchase money, nor recover it back, if already paid; and, unless there has been fraud, he is without relief, as against the vendor, either in law or equity. If, however, fraud has been practiced upon the purchaser, the mere fact of the contract having been executed by the delivery of the deed, does not deprive him of his right to relief; nor is it material whether the covenants for title do, or do not, extend to the particular incumbrance. Rawle, 606. The exception in the case of fraud, is the only one recognized to the well settled rule, that the purchaser's right to relief, after the execution of

the deed, depends solely upon the covenants for title which the deed contains.

This right to relief, is now recognized in courts of law and equity. In courts of law, it is allowed on the principle of preventing circuity of action. In strictness, the purchaser of real estate, in case of failure or defect of title, would be confined to his remedy at law, upon the covenants of his deed. This remedy did not arise from his right to recover back the purchase money, as upon a contract rescinded, but was one depending solely on the tenor and effect of the covenants. And, where a grantee, in a deed containing the usual covenants of title, is sued for the purchase money unpaid, instead of remitting him back to his covenants, in case of failure of title, the courts will allow him to make his defense at law, and he will not be compelled to pay the purchase money, which he may, the next day, recover back from his grantor. Rawle, 635. So, it is well settled, that a purchaser who has a present right to damages upon his covenants, may resort to a court of equity for redress, which, by its peculiar modes of administering relief, is well adapted to the settlement of the respective rights of the parties. Where the purchaser is entitled, at law, to defend himself from the payment of the purchase money, either wholly or partially, and has had no opportunity of doing so, a court of equity will not hesitate to grant relief, according to the circumstances of the case. Rawle, 681; 2 Story's Eq., section 796.

The defense presented by the answer in this case, is, that the note sued on was given in part consideration for land conveyed by plaintiff to defendant, Foster, with covenants of seizin, right to convey, against incumbrances, and of warranty, to which land defendant had no title, the title, at the time, being in one Snyder; and defendant, being notified to quit the possession of the land, was compelled, in order to prevent eviction, to pay $700, to buy in the superior title. If the deed had been wholly without covenants, as, in such case, the purchaser takes the land at his own risk, there would be no failure of consideration,

by reason of any failure or defect in the vendor's title. The transfer of the vendor's interest, whatever it may be, was the sole consideration for the purchase money. Where, however, as in this case, the covenants are general and unlimited, reaching to the title, as well as the possession of the land conveyed, the consideration of the purchase, is the present transfer of the vendor's interest, and the covenants of title contained in the deed.

Taking the facts averred in the answer, as admitted by the demurrer, are the covenants in the plaintiff's deed, broken? And if so, how far is defendant entitled to withhold the purchase money, or to set up the failure of title and eviction, as a defence to an action on a note given for the purchase money? To arrive at a just conclusion upon this subject, we will consider briefly, the meaning and operation of the covenants for title, contained in the deed to defendant.

The covenants of seizin, and of good right to sell and convey, are usually deemed synonymous, and may be considered together. The covenant against incumbrances, it will not be necessary to consider, as, whatever remedy it might afford the grantee, if it were the only covenant in the deed, his rights, in the present instance, are more fully assured by the other covenants of seizin and warranty. If these covenants are broken, we have no doubt but that such breach furnishes a good defence to the plaintiff's action.

1. The covenant of seizin, has been defined, in England, to be "an assurance that the grantor has the very estate in quantity and quality, which he purports to convey." *Howelle* v. *Richards*, 11 East 641. The words, from having been originally used as synonymous with possession, came to be looked upon, less as one of the parts of a title, than as synonymous with title itself; and the covenant that one was seized in fee, was regarded as a covenant for title, in contradistinction to the covenant for quiet enjoyment, which was called a covenant for the possession. Rawle on Cov. for Title, 50. In the United States, the

weight of authority inclines to the rule, that a covenant ✗ that one is seized, or lawfully seized, means seized of an indefeasible estate; and a covenant of seizin is regarded as a covenant for the title, the word being used as synonymous with right. *Greenly* v. *Wilcox*, 2 Johns. 1; *Hastings* v. *Welborn*, 2 Vermont, 417; *Thomas* v. *Perry*, 1 Peters C. C. 57; *Pollard* v. *Dwight*, 4 Cranch, 430; *Fitzhugh* v. *Croghan*, 2 J. J. Marr., 430; *Martin* v. *Baker*, 5 Blackf. 232; *Woods* v. *North*, 6 Humph., 309; 4 Kent's Com., 472; *Gray* v. *Briscoe,* Noy., 142; *Howelle* v. *Richards*, 11 East., 641; *Young* v. *Raincock*, 7 Com. Bench, 310.

In some of the states, as in Massachusetts, Maine, and, to a qualified extent, in Ohio, a different and peculiar construction has been adopted, by deciding that the covenant of seizin, does not exact an indefeasible estate, but is answered by the transfer of an actual seizin—even though tortious—if it be a seizin under color of title. *Martson* v. *Hobbs*, 2 Mass., 439; *Bearce* v. *Jackson*, 4 Mass., 408; *Cushman* v. *Blanchard*, 2 Greenleaf, 268; *Griffin* v. *Fairbrother*, 1 Fairfield, 95; *Backus* v. *McCoy*, 3 Ohio, 211; *Foot* v. *Burnett*, 10 Ohio, 327. If, at the time of the conveyance, the grantor does not own the land, the covenant is broken immediately. It is not necessary to allege an ouster or eviction, it is sufficient to negative the words of the covenant, and to allege that the grantor had no seizin or title to the land. *Rickert* v. *Snyder*, 9 Wendell, 416; *Bickford* v. *Page*, 2 Mass., 455; 4 Kent's Com., 479. The measure of damages for breach of this covenant, is the consideration money and interest, upon the ground that this is the actual loss. If the grantee, however, has lost less, he is limited to the amount of injury sustained. Sedgwick on Meas. of Damages, 176; *Caswell* v. *Wendell*, 4 Mass., 108; *Spring* v. *Chase*, 22 Maine, 502; *Tanner* v. *Livingston*, 12 Wendell, 82. The consideration money with interest, is the extent to which damages can, under any circumstances, be recovered, upon this covenant. As a general rule, this is the standard. They may, under some circumstances, fall below, but can never exceed it.

Rawle on Cov. for Title, 89. The range varies between the consideration money in the one extreme, and nominal damages in the other. If the vendee has himself extinguished the paramount title, by purchase, his damages are, of course, limited to the amount, reasonably paid for that purpose, provided it do not exceed the purchase money; and the burden of showing the amount to be reasonable, rests upon the grantee, the mere fact of the payment being no evidence of this. *Anderson* v. *Knox*, 2 Ala., 161; Rawle on Cov. for Title, 668; *Doremus* v. *Bond*, 8 Blackford, 368; *Loomis* v. *Bedell*, 11 N. H. 74. As upon a total breach of the covenant, the purchaser may, as a general rule, recover the whole consideration, so where there is a partial breach, he may recover *pro tanto*. Upon a failure of title to a specific part of the subject of the sale, either party may, for the purpose of affecting the damages, produce evidence to show the relative value which that part bears to the whole. Sedgwick on Damages, 171; Rawle on Cov. for Title, 112; *Morris* v· *Phelps*, 5 Johns., 56; *Leland* v. *Stone*, 10 Mass., 463; *Lea* v. *Dean*, 3 Wharton, 331; *Nelson* v. *Matthews*, 2 Hen. & Munf. 164.

We do not hesitate, therefore, in the conclusion that the facts averred in defendant's answer, that plaintiff, at the time of the conveyance, had no valid title to the land, are sufficient to constitute a breach of the plaintiff's covenant for seizin; and that defendant is entitled to set up any, and whatever damages, he has sustained by reason of such want of title, as a defence to the action on the note given for the purchase money. As we have seen, however, these damages are to be measured by the actual injury sustained. If the title to a portion only of the land conveyed, has failed, evidence may be given to show the relative value of such portion. And if defendant has purchased in the superior title, he can deduct from the purchase money, only the amount by him reasonably paid for such title.

2.   The covenant of warranty, is intended to assure to

the purchaser, the possession of the premises conveyed, and is only broken by eviction. This eviction may be either actual or constructive; and the weight of authority is in favor of allowing the purchaser to consider himself evicted, by buying in the paramount title, when it shall have been hostilely asserted. Rawle on Covenants for Title, 76, 264. In *Hamilton* v. *Cutts*, 4 Mass., 350, it was first held, that there may be a lawful dispossession, with the consent of the tenant in possession; and that, without the tenant losing his remedy on the covenant of warranty. There is no necessity for him to involve himself in a lawsuit, to defend himself against a title which he is satisfied must ultimately prevail. The law does not require the idle and expensive ceremony of being turned out by legal process, where that result would be inevitable. *Clark* v. *McNulty*, 3 Sergeant & Rawle, 372. So in *Greenvault* v. *Davis*, 4 Hill, 646, it is said: "There is no reason why such surrender, without the trouble and expense of a lawsuit, should deprive him of a remedy upon the covenant. The grantor is not injured by such amicable ouster. On the contrary, it is a benefit to him, for it thus saves the expense of an action against the grantee to recover the possession." See also *Radcliff* v. *Shipp*, Hardin (Ky.), 292; *Woodward* v. *Allen*, 3 Dana, 164; *Hanson* v. *Buckner*, 4 Ib., 204; *Sprague* v. *Baker*, 17 Mass., 590; *Loomis* v. *Bedell*, 11 N. H., 83; *Sterling* v. *Peet*, 14 Conn., 245; *Patton* v. *McFarlane*, 3 Penna., 425; *Stone* v. *Hooker*, 9 Cowen, 159. In *Leary* v. *Dunham*, 4 Georgia, 606, it is said: "The old rule of requiring the subsequent purchaser to hold on, until ousted by a judgment of a court, is now exploded. It went upon the presumption, that a legal investigation was necessary to determine in whom the legal estate was. But this doctrine is now repudiated as at war with the principles of justice."

The rule is now well settled, that the ouster or eviction necessary to constitute a breach of the covenant of warranty, need not be by process of law. The grantee may surrender the possession; but in such case, he assumes

the whole burden of proving that the title to which he surrenders, without contest, is actually paramount to that of the grantor. Sedgwick on the Measure of Damages, 158; *St. John* v. *Palmer*, 5 Hill, 595. If the covenantee is satisfied that the adverse claim, is by title superior to his own, and assumes the responsibility of determining upon the chances of its success, if he retires before it, it is at his own risk; and in the suit with his covenantor, he must assume the burden of proof, and rely upon and make out the adverse title to which he has yielded. It is, moreover, necessary that the adverse title shall have been hostilely asserted. When such has been the case, its purchase is considered as equivalent to an eviction, and the idle form of abandoning the premises under one title, in order to re-enter under another, is deemed unnecessary. Rawle on Covenants for Title, 264. See also, *Funk* v. *Creswell*, 5 Iowa, 62.

As to the measure of damages, upon a breach of the covenant of warranty, in some of the States, the rule is held to be the same as upon the covenants of seizin, and right to convey, and the damages are measured by the value of the land at the time of eviction; but in a large majority of the States of the Union, upon a breach of the covenant of warranty, or for quiet enjoyment, the measure of damages is limited to the consideration money and interest. Sedgwick on Damages, 170; Rawle on Covenants, 95, 327; Sugden on Vendors, Perkins' Notes, 1029 ; *Foley* v. *McKeegan*, 4 Iowa, 1. Compensation will, however, be given only for what is lost. No remuneration will be made for a mere technical breach of the covenant, and the damages will be made to correspond with the real injury sustained. Where an eviction has taken place, the courts do not hesitate to recognize the right of the purchaser, to detain the purchase money. If the eviction extends to a portion only of the premises conveyed, he may retain it to the extent of his injury. If he has been obliged to buy in the outstanding title, he may deduct from the purchase money, the amount necessarily and *bona fide* paid for that

purpose.   See authorities cited, *supra ;* Rawle, 668 ; *Loomis* v. *Bedell,* 11 N. H., 74; *Doremus* v. *Bond,* 8 Blackford, 368.

We are of opinion, then, that the facts presented by the answer, constitutes a sufficient defense to the action, in either light in which we have attempted to view them.   If the grantor had no valid title to the land at the time of the conveyance; or, if the grantee has since been evicted of the premises, by superior title, (the constructive eviction, alleged in this instance, being sufficient,)—if the covenant of seizin, or the covenant of warranty, be broken, the defendants may detain the purchase money, in sufficient amount to make good any damages sustained by the breach. They will not be turned over for their indemnity, to a separate action on the covenants of the deed, when the rights of both plaintiff and defendant may be determined in the same action, without oppressing courts and parties with different suits growing out of the same subject matter.

The foregoing views, sufficiently dispose of all the questions legitimately arising upon the demurrer to defendant's second amended answer.   Other questions have been argued by the counsel, which we think do not properly arise upon the record, as we view it, and which are not now before us for adjudication.   The questions relating to the certificate of acknowldgement of the deed to Snyder; to the effect of recording the deed in Fayette county; and to the proper construction to be given to the act of January 12, 1852, (chapter 12, section 8,) attaching Chickasaw county to Fayette county, for election, revenue, and judicial purposes, do not arise upon the demurrer.   The deeds were not offered in evidence, and the questions raised by the counsel, do not appear to have been passed upon by the district court.   When offered in evidence, their introduction may be objected to, and the court having decided upon their sufficiency and admissibility, its ruling, being excepted to, may be reviewed here.

The judgment of the district court is reversed, and the cause remanded for further proceedings, not inconsistent with this opinion.